SCHINER and another, Plaintiffs in error, vs. THE STATE, Defendant in error.

*June 10—July 8, 1922.*

*Robbery: Assault with dangerous weapon: Revolver as dangerous weapon: When presumably loaded: Venue: Proof: Remarks of district attorney: Non-prejudicial error.*

1. In a prosecution for robbery under sec. 4375, Stats. 1921, providing punishment for one who assaults another and robs the person so assaulted, the robber being armed with a dangerous weapon, with intent, if resisted, to kill or maim the person robbed, evidence that a revolver which defendant used in committing a robbery was loaded is *held* sufficient to support a verdict of guilty.

2. Although an empty revolver merely pointed at a person and not used to strike is not a dangerous weapon however much the person at whom it is pointed may be put in fear, a loaded revolver pointed at a person within shooting distance is a dangerous weapon as a matter of law.

3. Proof that a revolver was pointed at a person within shooting distance, with words indicating an intention to fire, the person assailed not knowing but that it is loaded, presents a *prima facie* case that the revolver is loaded and consequently a dangerous weapon.

4. Testimony of a witness whom the complainant took to the scene of the offense on the following morning, that the offense occurred in the county in which the trial took place, is sufficient proof of venue.

5. In a prosecution for robbery in which, to an inquiry of defendants' counsel as to the record in the case, a reply of the district attorney, "Which one? There are five cases," while error, in view of a prompt admonition to the jury to disregard the remark and also of the inherent strength of the prosecution was not so prejudicial as to constitute reversible error.

ERROR to review a judgment of the municipal court of Milwaukee county: A. C. BACKUS, Judge. *Affirmed.*

*Leo Reitman* of Milwaukee, for the plaintiffs in error.

For the defendant in error there was a brief by the *Attorney General, Winfred C. Zabel,* district attorney of Milwaukee county, and *George A. Shaughnessy,* assistant district attorney, and oral argument by *Eugene Wengert,* assistant district attorney.

DOERFLER, J. The plaintiffs in error, hereinafter called the defendants, were convicted in the municipal court of Milwaukee county of assault upon one Ivan Plaveff with intent to rob, and with robbery, being armed with a dangerous weapon, and were sentenced to imprisonment in the state prison therefor, and prosecute this writ of error to reverse the judgment. After verdict the defendants moved for a new trial upon the ground, as is alleged, that the state failed to prove its case.

Sec. 4375 of the Statutes, under which the defendants were prosecuted, is as follows:

"Any person who shall assault another and shall feloniously rob, steal or take from his person any money or other property which may be the subject of larceny, such robber being armed with a dangerous weapon, with intent, if resisted, to kill or maim the person robbed, or being so armed, who shall wound or strike the person robbed, shall be punished by imprisonment in the state prison," etc.

The offense with which the defendants were charged under this section consists of four distinct elements: (1) assault; (2) robbery; (3) being armed with a dangerous weapon; (4) intent, if resisted, to kill or maim, or, in lieu of this intent, actual wounding or striking. The defendants pleaded not guilty to the information and attempted to prove an *alibi*.

It appears from the evidence of the complaining witness, who was a taxicab driver in the city of Milwaukee, that the defendants accosted him at 2:45 a. m. on June 25, 1920, at Grand avenue and Second street in said city, and requested that they be taken to the farm of the defendant *Slowek*, a distance of about fifteen miles south of the city limits. When the taxi arrived at a point several miles southwest of the city of South Milwaukee the complaining witness was requested to stop the machine, whereupon the defendant *Slowek* drew a revolver, which he pointed at the complaining witness, and directed him to remain within the car, to throw up his hands, and to keep quiet. Thereupon *Slowek* opened up the revolver and showed the complainant that it was loaded and contained five bullets, and threatened that if he resisted he would shoot him. During this time the defendant *Schiner* also held in his hand a revolver, and, under threats of the defendants that they would either kill or injure him, they took from the complainant his gold watch, of the value of about $30. Thereupon the complainant's hands were tied back of him, and under the muzzle of a revolver he was led into a woods belonging to one Mahr, where he was tied to a tree and robbed of the sum of $35 in cash, and, before leaving, one of the defendants left with the complainant a piece of paper containing an address, namely, "La Fayette Garage, Thirty-fourth and Brush streets, Chicago," and the complainant was told that he would find his car at that place. An investigation subsequently made by Detective English of the Milwaukee police force disclosed that Brush street in Chi-

cago did not extend to Thirty-fourth street and that there
was no such garage.   It was also shown by the evidence
that the defendants had lived in Milwaukee for a period
of about a month, and that during such time were not en-
gaged in any visible employment.

Upon the trial the defendants testified that neither of
them could drive an automobile.   At the time of the arrest
it was testified by Detective Burns that *Schiner* admitted
that he had worked in a garage in Detroit.   On the trial
defendants testified that they came from Toledo, Ohio, but
while being interrogated by Detective Burns, who had
these men under surveillance a short time prior to the rob-
bery, they stated that they had come from Detroit.   At
the time of the arrest the defendant *Schiner* stated that he
knew *Slowek* but slightly and only a very short time, while
at the trial it was admitted that they had met in Toledo
about two years before and had come to Milwaukee to-
gether.

In support of the *alibi* of the defendants both testified
that they were in their rooms at the time of the alleged
robbery; that they did not own a revolver; that they had
never met the complainant; and that they did not participate
in the ride in the taxi or in the robbery.   Two witnesses
for the defendants, namely, Edward Aschenbrenner and
Ringle Egan, attempted to corroborate such *alibi,* but
neither of them was definite in his testimony as to the date,
nor could either give satisfactory evidence as to the where-
abouts of the defendants after 12 o'clock midnight of the
day of the robbery.

Substantially upon the testimony above referred to the
jury returned a verdict of guilty, and the defendants were
thereupon sentenced.

It would appear from the evidence as so adduced that
defendants' counsel did not seriously contend that there
was not sufficient evidence to connect the defendants with
this holdup and robbery, and one of his main contentions

is based upon the claim that there was no satisfactory evidence submitted to the jury upon which it could be found that the revolvers of the defendants were at the time of the robbery loaded. As above stated, one of the essential elements charged, and which it was necessary to prove, was that the defendants or either of them at the time of the robbery were armed with a dangerous weapon, and that they had the intent, if resisted, to kill or maim the person robbed.

It is true an empty revolver merely pointed at a person, and not used to strike with, is not a dangerous weapon, however much the person at whom it is pointed may be put to fear. A loaded revolver pointed at a person within shooting distance is a dangerous weapon as a matter of law. *Lipscomb v. State,* 130 Wis. 238, 242, 109 N. W. 986.

"Under the weight of authority, when the state proves that a gun or revolver was pointed at a person within shooting distance with a threat or other words indicating intention to fire, the person assailed not knowing but that it is loaded, the state has made *prima facie* proof that the gun or revolver is loaded and consequently a dangerous weapon." *State v. Herron,* 12 Mont. 230, 29 Pac. 819; *State v. Cherry,* 11 Ired. Law, 475; *State v. Shepard,* 10 Iowa, 126; *Beach v. Hancock,* 27 N. H. 223; *Crow v. State,* 41 Tex. 468.

In the instant case the evidence in question goes beyond what is necessary, in accordance with the authorities cited, to make out a *prima facie* case. In order to put the complainant in fear the revolver was not merely pointed at him, with a threat, but was actually opened up so as to exhibit the bullets. The desperate nature and character of the holdup in itself constitutes strong and powerful evidence indicative on the part of the defendants, together with the uttered threats, of an intention to accomplish their end, if need be, by the use of this revolver in such a way as to

constitute the instrument a dangerous one as contemplated by the statute. We are satisfied from an examination of the record, not only that all of the elements of the offense have been satisfactorily and abundantly proven, but that the jury were fully justified in discrediting the claim of the *alibi.*

Defendants' counsel also claims that venue was not sufficiently proven. It appears that on the morning of the commission of the offense the complainant took the witness Mahr to the place where the robbery was committed and that the latter testified that such place was located in Milwaukee county. Such proof is sufficient to establish venue.

Defendants' counsel also assigns as error a number of alleged prejudicial remarks made by the district attorney during the course of the trial. He claims that upon making inquiry as to the record in the case the district attorney replied, "Which one—there are five cases?" The record discloses that defendants' counsel objected to such remark and that the court instructed the jury to disregard the same. The attorney for the state denied having made the remark charged; and while it does not appear from the record that such remark was actually made, nevertheless it would appear from the ruling of the court upon the objection, and its instructions to the jury to disregard the same, that such incident actually did transpire. The district attorney is an officer of the court and an important element in the machinery of justice. It is his duty to refrain from making any unjustifiable remarks which have a tendency to prejudice the rights of a defendant in a criminal case. It is as much in the interests of the state that an innocent man be not convicted as it is that no criminal shall escape unpunished. The district attorney, by virtue of his office and as an attorney at law, and under his oath, is charged in the prosecution of a criminal offense merely with the duty of securing the administration of justice; the value of his services is not measured by the number of convictions secured, but by his efforts to uphold the peace and dignity

of the state. It is an office of high honor and trust. With these ideals in mind, how repulsive appears a thrust like the one complained of, having a tendency to pervert justice and to improperly prejudice the minds of court and jury. Due allowance must necessarily be made in all cases for the aggravations and the excitement incident to a trial. We have carefully examined the entire record, and in view of the prompt admonition of the court to the jury to disregard the offensive remark, and the inherent strength of the prosecution's cause, we have concluded that the remark, though error, is not prejudicial so as to work a reversal.

A number of assignments of error are based upon other remarks of the district attorney, the introduction and reception of improper evidence, and the failure of the court to give certain requested instructions. We will not treat these assignments, for the reason that it is our opinion that on the whole the defendants have had a fair trial, and that the errors committed, if any, were not of sufficient gravity to work a reversal, in view of sec. 3072m of the Statutes.

The judgment and sentence of the trial court is therefore affirmed.

*By the Court.*—It is so ordered.